WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Gomez-Shaw, *et al.*, | No. CV-23-00575-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Susan White, *et al.*, | |
| Defendants. | |

At issue is Defendants Commissioner Susan White, Commissioner Janette Corral, and the State of Arizona's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 26, "MTD"), to which *pro se* Plaintiffs Raymond Gomez-Shaw and Mary Lou Caballero filed a Response (Doc. 31, "Resp."), and Defendants filed a Reply (Doc. 32). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the following reasons, the Court grants Defendants' Motion to Dismiss.

**I.   BACKGROUND**

Plaintiffs' claims in this matter arise from an action in Maricopa County Superior Court regarding the estate of Catalina Gomez. The Superior Court first appointed Commissioner Susan White, and then Commissioner Janette C. Corral, to adjudicate the probate case; the State of Arizona is their employer in that capacity. (Doc. 42, Plaintiffs' First Amended Complaint ("FAC") at 2.) Plaintiffs challenge certain actions taken by Commissioners White and Corral in that probate case. Plaintiffs brought suit in this Court

seeking relief under 42 U.S.C. § 1983 for alleged violations of Plaintiffs' rights to due process and a fair trial, guaranteed by the Fifth and Fourteenth Amendments to the Constitution. (FAC at 2.)

Plaintiffs allege various errors on the part of Commissioner White, including that Commissioner White disregarded a stipulation in a will, *de facto* evicted Plaintiff Gomez-Shaw without jurisdiction, authorized payment of estate funds to Plaintiff Gomez-Shaw's former employee, sanctioned Plaintiff Gomez-Shaw without showing specific cause for the amount, and limited Plaintiff Caballero's participation in a hearing. (FAC at 2–3.) Plaintiffs allege that Commissioner Corral violated their civil rights by failing to follow *Matter of Estate of Shano*, 869 P.2d 1203 (Ariz. Ct. App. 1994), which they describe as "one of the strongest precedence [sic] set in probate law." (FAC at 3.) Plaintiffs further contend that because Commissioners White and Corral were acting under color of law as judicial officers of the Superior Court, the State of Arizona is liable for their violations of Plaintiffs' rights. (FAC at 3.)

Defendants moved to dismiss Plaintiffs' Complaint (Doc. 1, "Compl.") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the matter is barred under the *Rooker-Feldman* doctrine, and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), asserting that Defendants are entitled to immunity from suit under 42 U.S.C. § 1983. Plaintiffs subsequently filed an Amended Complaint (Doc. 29), which was stricken for failure to comply with LRCiv 15.1(b), with leave to refile. (Doc. 30). Plaintiffs then filed the operative Amended Complaint (Doc. 42). Defendants thereafter filed a Notice (Doc. 43) stating that their Motion to Dismiss "is fully applicable to any iteration of Plaintiffs' Complaint."

## II.    LEGAL STANDARDS

### A.    The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine derives from two Supreme Court decisions, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). First in *Rooker* and later in *Feldman*, the Supreme Court held that federal

district courts cannot review state court decisions in an appellate capacity. The Ninth Circuit Court of Appeals has stated that *Rooker-Feldman* "prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing *de facto* appeals from state-court judgments." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "It is a forbidden *de facto* appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth

1  and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*,
2  556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a
3  savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote
4  and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236
5  (1974)).

**III.   ANALYSIS**

**A.   *Rooker-Feldman***

Defendants argue that Plaintiffs' claims must be dismissed under the *Rooker-Feldman* doctrine. (MTD at 1–2.) The Court agrees.

As noted, Plaintiffs' claims are based on errors they allege that Commissioners White and Corral committed during the probate action in state court. For example, Plaintiffs allege that Commissioner White violated Plaintiffs' rights to due process and a fair trial by introducing "fatal error" when she "disregarded a stipulation in the will" (FAC at 2) and authorized payment of estate funds to one of Plaintiff Gomez-Shaw's former employees. (FAC at 3.) Plaintiffs allege that Commissioner White violated Plaintiff Caballero's rights by not allowing her to speak at a hearing or cross examine witnesses, which Plaintiffs claim was also "fatal error." (FAC at 3.) As to Commissioner Corral, Plaintiffs allege that she erred in failing to follow the Arizona Court of Appeals' decision in *Matter of Estate of Shano*. (FAC at 3.) Because adjudicating the merits of these claims would require the Court to find that Commissioners White and Corral erred in their application of Arizona law to the probate action, Plaintiffs implicitly—and explicitly—challenge the correctness of the state-court judgment. To find for Plaintiffs would require this Court to review the Superior Court's rulings, an appellate function barred by *Rooker-Feldman*. *Noel*, 341 F.3d at 1163.

In their Response, Plaintiffs assert that they "are well aware of *Rooker-Feldman* doctrine," and "are well aware that direct relief from improper decisions in their probate case should be addressed in an appeal to the Arizona Superior Court of Appeals." (Resp. at 1–2.) Nonetheless, Plaintiffs contend that their Amended Complaint is not a *de facto*

appeal because they are not asking for "an overturning of probate decisions," but rather, "only for prospective injunctive relief of continued civil rights violations." (Resp. ¶ 2.) In the Amended Complaint, Plaintiffs allege they are seeking "prospective injunctive relief pursuant to 5 U.S. Code § 702 . . . to prevent the continued violation of their 5th and 14th amendment civil rights." (FAC at 4.)

As an initial matter, 5 U.S.C. § 702 provides a cause of action for parties to request judicial review of actions taken by federal administrative agencies. *See* 5 U.S.C § 701(b)(1). As the Superior Court, along with its Commissioners, is not one of these agencies, judicial review in this case would be inappropriate under 5 U.S.C. § 702. In any event, regardless of the way that Plaintiffs seek to characterize their claims, it remains the case that adjudicating them would require this Court to review the correctness of Commissioners White and Corral's decisions in an appellate capacity. Plaintiffs' claimed violations of their Fifth and Fourteenth Amendment rights to due process and a fair trial are predicated on their allegations that Defendants made erroneous judicial decisions and misapplied state law. The Court could not afford the relief Plaintiffs seek other than to declare the Commissioners erred in the probate action. For these reasons, the Court finds that Plaintiffs' claims either directly challenge, or are "inextricably intertwined" with, the state court rulings, and this matter therefore is barred as a *de facto* appeal under the *Rooker-Feldman* doctrine. *See Pyle v. Hatley*, 293 F. Supp. 2d 970, 977 (C.D. Cal. 2002) (quoting *Feldman*, 460 U.S. at 486–87).

**B.     Immunity**

Dismissal of Plaintiffs' claims is also warranted under the Eleventh Amendment and the doctrine of absolute judicial immunity. *See Powelson v. United States*, 150 F.3d 1103, 1105 (9th Cir. 1998) ("Sovereign immunity is grounds for dismissal independent of subject matter jurisdiction."). Under the Eleventh Amendment, a state or arm of the state may not be sued in federal court without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). "While the [Eleventh] Amendment by its terms does not bar suits against a state by its own citizens . . . an unconsenting state is [nonetheless] immune from suits

brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). Absent waiver of Eleventh Amendment immunity through consent to suit or valid abrogation of that immunity, federal courts may not entertain a private person's suit against a state. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011).

Congress has not abrogated the States' Eleventh Amendment immunity with respect to 42 U.S.C. § 1983, *Quern v. Jordan*, 440 U.S. 332, 340 (1979), and the State is not a "person" subject to suit within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The State of Arizona has not consented to suit, and therefore any claims against it must be dismissed. *See e.g.*, *Bauerle v. City of Tucson*, 234 Fed. Appx. 607, 608 (9th Cir. 2007) (affirming dismissal of a suit under 42 U.S.C. § 1983 where the only defendant was the State of Arizona).

Plaintiffs attempt to make an end run around the State of Arizona's sovereign immunity by noting that they also name the Commissioner Defendants and contending that "by naming state officials in their official capacity . . . [a] plaintiff may sue the State for prospective injunctive relief." (Resp. at 2 (citing *Weidman v. Thomas*, Civ. A. No. 92-1365-B, 1993 WL 186163 (D. Kan. May 10, 1993)).) Plaintiffs argue that because they name Commissioners White and Corral, their claims are "an exception to Eleventh Amendment sovereign immunity" under *Ex parte Young*. (*Id.*) *Ex parte Young* does provide an exception to Eleventh Amendment immunity, but it only applies to "claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123 (1908)). *Ex parte Young* does not allow claims for retroactive monetary relief, and state officials are immune from suits seeking retroactive money damages as relief. *Edelman*, 415 U.S. at 666–67.

The precise relief Plaintiffs seek in this litigation has shifted in the course of their amendments and remains unclear. In their initial Complaint, Plaintiffs requested "total relief in the amount of $30 million dollars." (Compl. at 4.) In their Amended Complaint, Plaintiffs state that their civil rights are "priceless and that the case value exceeds $75,000 for jurisdictional purposes," but now also expressly disclaim monetary relief and argue that Defendants are thus not entitled to Eleventh Amendment immunity here. (FAC at 4, citing *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989).) To be clear, to the extent that Plaintiffs seek monetary relief, when the state is "the real, substantial party in interest," Eleventh Amendment immunity extends to "suit[s] against state officials." *Pennhurst*, 465 U.S. at 101 (quotations omitted). Moreover, judges are entitled to absolute judicial immunity from suits for damages brought based on a "judicial act," such as those acts "involved in resolving disputes between parties." *Forrester v. White*, 484 U.S. 219, 225–27 (1988). Commissioners appointed to adjudicate a probate action are entitled to this same judicial immunity. *See e.g.*, *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994) (holding that a state probate court judge was entitled to absolute judicial immunity for actions that were inherently judicial in nature); *Mansanares v. Nothwehr*, No. CV-07-338-PHX-SRB, 2007 WL 9724692 (D. Ariz. Dec. 5, 2007) (holding that an Arizona Superior Court Commissioner was entitled to judicial immunity for actions taken while ruling in plaintiff's criminal case). Therefore, the Commissioners are entitled to judicial immunity in any damages suit regarding actions taken in their official capacity as judges in the probate action.

Plaintiffs assert that they are "not naming the judicial defendants . . . seeking a claim against them personally" (Resp. at 2), and maintain they are seeking only prospective injunctive relief—the contours of which remain elusive. However, *Ex parte Young* generally does not provide an exception to Eleventh Amendment immunity with regard to judicial officers, because judges "do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). As the Supreme Court also noted, "[i]f a state court errs in its

rulings, too, the traditional remedy has been some form of appeal." *Id*. As noted above, this Court is not the proper forum for such appeal in any event.

In sum, to the extent that Plaintiffs seek monetary relief, the State of Arizona is immune from suit under 42 U.S.C. § 1983 in this Court pursuant to the Eleventh Amendment, and Commissioners White and Corral are entitled to absolute judicial immunity from suit for actions taken in their capacity as Commissioners adjudicating the probate case. To the extent that Plaintiffs seek injunctive relief, the Commissioners are not proper defendants and, in any event, this suit is a forbidden *de facto* appeal because the nature of Plaintiffs' claims requires the Court to determine the correctness of the Commissioners' application of Arizona law and interpretation of the estate at issue in the probate case.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds this matter barred by the *Rooker-Feldman* and sovereign and judicial immunity doctrines. Because these are deficiencies that cannot be cured by amendment, the Court dismisses the claims without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 26).

**IT IS FURTHER ORDERED** dismissing Plaintiffs' Amended Complaint (Doc. 42) with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment and close this case.

Dated this 1st day of August, 2023.

Honorable John J. Tuchi
United States District Judge